UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MARILYN POWELL as next friend of C.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-CV-248 |
| | ) | (SHIRLEY) |
| ALCOA CITY SCHOOLS, | ) | |
| ALCOA HIGH SCHOOL, | ) | |
| TOM SHAMBLIN, in his individual capacity | ) | |
| and official capacity as Director of | ) | |
| Alcoa City Schools, and | ) | |
| SCOTT PORTER, in his individual capacity | ) | |
| and official capacity as Principal of Alcoa | ) | |
| High School, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 13]. The Defendants have filed a Motion to Dismiss [Doc. 10], in which they move the Court to dismiss this matter pursuant to Rule 12 of the Federal Rules of Civil Procedure. The Plaintiff did not respond to the Defendant's Motion in a timely manner. Nonetheless, the Court scheduled a hearing to allow the parties to present their positions on dismissal. This hearing took place on August 27, 2009. Marilyn Powell was present as next friend of C.P. representing herself. Attorney Lee Kull was present representing the Defendants.

**I.   FACTS**

C.P. is the subject of this lawsuit. C.P. is a minor, who at the time of the events underlying this case was fourteen years of age. The Complaint and accompanying records indicate that at six years of age C.P. was evaluated for and diagnosed with attention and hyperactivity disorders. [Doc. 3-1 at 25-27]. According to the Plaintiff and a letter from John B. Robertson, M.D., which the Plaintiff submitted at the hearing as **Exhibit 1**, these conditions have persisted.

During the 2008-2009 school year, C.P. was enrolled as a sophomore at Alcoa High School, a public school operated by the Alcoa City School District. Before the school year began, Plaintiff Marilyn Powell ("Ms. Powell") wrote Defendant Tom Shamblin ("Mr. Shamblin"), the director of Alcoa City Schools, regarding a conversation she had with Defendant Scott Porter ("Mr. Porter"), the Principal at Alcoa High School, on July 24, 2008. [Doc. 3-1 at 1]. In her letter, Ms. Powell stated that Mr. Porter had told her that her son was referred to the Pershing Alternative School ("PAL"). Ms. Powell argued that "C.P. [does] not need to go to PAL instead he need[s] to be evaluated for ADHD and some other issues that may be going on." According to the Complaint, on October 27, 2008, Mr. Porter placed C.P. in PAL without contacting Ms. Powell. [Doc. 3 at 1; Doc. 3-1 at 2]. On October 29, 2008, Ms. Powell wrote Mr. Porter stating that she disagreed with the school's decision to place C.P. in alternative school, as a result of leaving school without permission. [Doc. 3 at 1; Doc. 3-1 at 3]. Ms. Powell stated that she did not agree with the decision, stated she would appeal it, and asked that C.P. be placed in his original program.

On October 31, 2008, Ms. Powell, C.P., and Mr. Porter met and signed a "Behavior Contract." [Doc. 3 at 1]. It appears that C.P. was placed back in Alcoa High School and assigned to the school's "Help Program." The Behavior Contract stated that any failure to comply with its

2

terms would result in C.P. being sent to PAL. [Doc. 3-1 at 4]. On November 10, 2008, C.P. received a disciplinary report for unruly behavior, failure to comply with teacher requests, having a verbal altercation with a student, and a dress code violation. [Doc. 3 at 1, Doc. 3-1 at 5]. On November 25, 2009, C.P. received a second disciplinary report for arguing with a teacher's request. [Doc. 3 at 1, Doc. 3-1 at 6]. Based upon these incidents, which were violations of the Behavior Contract, C.P. was placed in PAL. The same day, Ms. Powell wrote Mr. Porter arguing that the placement was unreasonable and was not in compliance with the student handbook. [Doc. 3-1 at 7].

On February 4, 2009, C.P. was suspended from PAL for disrespect to a teacher, Mr. Gossett, and failure to comply with the dress code. [Doc. 3-1 at 9]. On February 8, 2009, Ms. Powell emailed Mr. Porter stating that she spoke to Mr. Gossett often and he had not mentioned any problems. [Doc. 3-1 at 10]. Mr. Porter responded that Mr. Gossett and other staff complained of it being a day-to-day struggle to get C.P. to sit down and do his work and that he had been given many chances to comply. Further, he stated that pursuant to a second Behavior Contract that C.P. signed when he entered PAL, a first violation of disciplinary standards would result in a ten day suspension. [Doc. 3-1 at 10]. On February 13, 2009, Ms. Powell wrote Ms. Porter asking for a copy of C.P.'s "Individualized Education Program" ("IEP"). [Doc. 3-1 at 11]. Mr. Porter responded that C.P. did not have an IEP because he was not listed as a special education student, but he directed her to the director of special education, for further information. [Doc. 3-1 at 11].

During the same period, C.P. was under the supervision of the Blount County Juvenile Court. Although the details of C.P's dealings with the Juvenile Court is not clearly addressed by either party, it appears that if C.P. were suspended from school, it would be a violation of his conditions of supervision. This accords with a letter Mr. Shamblin wrote Ms. Powell on February 23, 2009,

3

in which he stated that Ms. Powell was welcome to share the letter with Judge Denton, presumably a Judge with the Juvenile Court in Blount County. In his letter, Mr. Shamblin explained:

> Although I cannot nullify the suspension of your son [C.P.] please note that it was our expectation that [C.P.] would return to our school after the 10 days [of suspension from school] were served. Upon his return we would develop and implement a behavior plan, which would attempt to correct any similar behaviors when he returns. According to what you told me this morning, [C.P.] should be on medication and that you have been trying to get this arranged. If it is determined that medication is needed, then we would certainly make this part of the behavior plan.

[Doc. 3-1 at 12]. The next day, Ms. Powell sent a letter confirming receipt of Mr. Shamblin's letter and reiterating that psychiatrists, not just Ms. Powell, had stated that medication was needed to remedy the behavior problems. [Doc. 3-1 at 13]. In a letter dated February 26, 2009, Mr. Shamblin stated, "our attorney has advised us that by law, we must provide a behavior plan for when [C.P.] returns to school." [Doc. 3-1 at 14]. Ms. Powell sent a final reply letter on March 1, 2009, recapping the events and stating that she was "afraid for C.P. to come back to Alcoa High before he is stabilized on his medication," because she did not want him "to go to jail for 20 days simply because Mr. Porter and Mr. Gossett refused to communicate with [her]." [Doc. 3-1 at 15]. In late February, Ms. Powell also exchanged correspondence with Judy Rice regarding the possibility of C.P. being put on homebound status.

On or about March 9, 2009,[1] C.P. was stopped by an Alcoa Police Officer at a local basketball court. This encounter eventually led to an arrest, but according to the Complaint, C.P. was not placed in custody on March 17, 2009. [Doc. 3 at 2]. After C.P. was taken into custody, Ms.

---

[1] The Complaint [Doc. 3] states that these events occurred on March 9, 2009. However, other exhibits Ms. Powell has submitted to the Court say the events took place on March 10, 2009. [Doc. 3-1 at 20]

4

Powell wrote Mr. Porter an email on March 21, 2009, asking why her son had not been put on a 504 plan. [Doc. 3-1 at 22]. Mr. Porter responded that C.P. was not referred for a plan by any of his teachers but that the school would be happy to review the records again and would assist when C.P. returned to school. [Doc. 3-1 at 22]. On April 5, 2009, Ms. Powell emailed another Alcoa Schools official, Deborah Smith ("Ms. Smith") stating that the email constituted "an official complaint against Alcoa High School for not providing [C.P.] with a 504 plan. . . ." Mr. Shamblin responded to this request, but a copy of this response was not submitted to the Court, and Ms. Powell sent Mr. Shamblin an email on May 7, 2009, stating that she was dissatisfied with his and Ms. Smith's explanation for why a 504 plan was not previously developed. [Doc. 3-2 at 1].

On May 5, 2009, Judge Denton sentenced C.P. to 210 days in juvenile detention.[2]

Ms. Powell applied for *in forma pauperis* status on June 5, 2009, and after this request was granted, the Complaint in this matter was filed on June 11, 2009. During the spring and summer of 2009, Ms. Powell filed three other suits against the entities that have played a role in this ongoing saga. See Powell v. Alcoa High School and Scott Porter, No. 3:09-CV-113 (filed March 16, 2009); Powell v. Blount County Juvenile Det. Center, No. 3:09-CV-171 (filed April 21, 2009); and Powell v. Helen Ross McNabb Home Base Program, Stacie West, and Tracy Staff, No. 3:09-CV-277 (filed June 24, 2009). In the case before this Court, the Plaintiff's Complaint [Doc. 3] is not altogether clear, but it appears to allege violations of the Fourteenth Amendment to the United States Constitution; the Civil Rights Act, specifically 42 U.S.C. § 1983; Rehabilitation Act of 1973, 29

---

[2]No charging documents or other documentation were filed with the Court, but at the hearing, both parties appeared to be in agreement that C.P. was on probation at the time of these events and that his suspension constituted a violation of the terms of this probation. Further, both parties agreed that C.P. was sentenced on May 5, 2009, and remained in custody at the time of the hearing.

U.S.C. § 701 et seq.; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The Complaint seeks equitable relief in the form of a "504" plan, compensatory and punitive damages, and an award of attorney fees and costs.[3]

## II. ANALYSIS

In their Motion, the Defendants move to dismiss this case on four grounds. First, the Defendants argue that the Ms. Powell has failed to plead facts which establish federal jurisdiction. The Defendants also argue that Ms. Powell did not properly serve the thirty-two exhibits she attached to her complaint and move for dismissal on insufficiency of process. In addition, the Defendants maintain that Ms. Powell has not pursued resolution of this matter through the Office for Civil Rights. The Defendants also move for dismissal because of the striking similarities between this case and a case previously filed by Ms. Powell, Powell v. Porter, No. 3:09-CV-113. The Court will address each of these in turn.

### A. Jurisdiction of this Court

The Defendants claim that the Plaintiff's "complaint is replete with irrelevant matters and conclusory statements which falls [short] of even the minimal requirements of federal jurisdiction." [Doc. 12 at 1].

"A claim falls within this court's original jurisdiction under 28 U.S.C. § 1331 only in those cases in which a well-pleaded Complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question

---

[3]While this is the relief the Complaint lists, Ms. Powell later denied seeking relief other than a 504 plan in documents filed with the Court [Doc. 17 at 2]. She also stated at the hearing on this matter that all she wanted from this action was a 504 plan for her son. The Court will address the issue of what relief it is that Ms. Powell actually seeks later in this opinion.

6

of federal law." Eastman v. Marine Mech. Corp., 438 F.3d 544, 550 (6th Cir. 2006). The Defendants note that some statements in the Complaint are conclusory or irrelevant. While this may be true, the Court finds that the facts that are included in the Complaint along with the accompanying statement for relief met the threshold for pleading federal causes of action. Further, in this matter, all of the Plaintiff's stated claims are for relief under federal law.

The Plaintiff has pleaded a "cause of action . . . created by federal law, that is, where federal law provides a right to relief," Eastman, 438 F.3d at 550, and it clear that the Plaintiff has pleaded claims "arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331. Accordingly, the jurisdiction of this Court is proper.

**B.      Service of Exhibits**

The Plaintiff filed thirty-two exhibits, which are collectively Court Documents 3-1 and 3-2, with her Complaint. The Defendants claim that none of these exhibits were served with the Summons and Complaint in this matter. The Defendants point out that under Rule 10 of the Federal Rules of Civil Procedure, a copy of a written instrument that is an exhibit to a pleading is a part of the pleading, Fed. R. Civ. P. 10(c), and failure to serve a complete complaint is grounds for the defense of insufficiency of service of process, Fed. R. Civ. P. 12(b)(5). [Doc. 12 at 2].

However, as the Defendants also acknowledge in their Memorandum, *pro se* litigants are allowed a degree of latitude in their filings. Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999). This lack of service appears to be the type of error on which the Court is to afford leniency especially since Ms. Powell filed all of the exhibits in the Court's electronic case filing system, clearly labeled the documents, and cross-referenced them in her Complaint. [Docs. 3, 3-1, 3-2]. Further, at the hearing, the Court printed the Defendants a copy of the documents.

The Court finds that dismissal for failure to serve would be an unduly harsh resolution to what, by all accounts, was a harmless omission.

**C.      Failure to Exhaust Administrative Remedies**

Alternatively, the Defendants argue that Ms. Powell should have sought relief through the Office for Civil Rights. [Doc. 12 at 2]. The Office for Civil Rights serves the nation's student population and is charged with implementing a variety of federal civil rights statutes including: Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, Title IX of the Education Amendments of 1972, Title IX of the Education Amendments of 1972, and Title II of the Americans with Disabilities Act of 1990.

In this case, Ms. Powell has sought relief under a number of these statutes, but she admits that the goal of the Complaint is to obtain a 504 plan for her son pursuant to Section 504 of the Rehabilitation Act. Section 504 of the Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . .

29 U.S.C. § 794(a). When a claim under Section 504 involves public education, the court must consider the Individuals with Disabilities Education Act ("IDEA"). IDEA requires that before bringing claims under other statutes, specifically the Rehabilitation Act, which seek "relief that is also available under [IDEA]," the administrative procedures outlined in 20 U.S.C. § 1415 must be exhausted. 20 U.S.C. § 1415(l); S.E. v. Grant County Bd. of Educ., 544 F.3d 633 (6th Cir. 2008).

These administrative procedures include, *inter alia*: the parent or other representative filing a complaint and forwarding a copy of the complaint to the state or local education agency, §

8

1415(b); a due process hearing conducted by the state or local education agency, § 1415(f); voluntary mediation § 1415(e); and a right to appeal the due process hearing decision to the state education agency if it was made by a local agency, § 1415(g). Further, the procedures include a number of safeguards that are to be afforded to the complaining party including the right to present evidence, a right to compel the attendance of and cross-examine witnesses, and a right to obtain a written record of the proceedings, findings, and decision. After completing this process, "any party aggrieved by the findings and decision made under [the procedure], shall have the right to bring a civil action with respect to the complaint presented in the [proceedings], which may be brought in any State court of competent jurisdiction or in a district court of the United States . . ." 20 U.S.C. § 1415(i)(2)(a)

In S.E. v. Grant County Bd. of Educ., 544 F.3d 633 (6th Cir. 2008), the Court of Appeals for the Sixth Circuit recently addressed failure to exhaust the IDEA administrative procedures while pursuing a Section 504 plan. In S.E. v. Grant County, the court found that the crux of the plaintiff's complaint was that the student had not been provided with a plan to properly address her academic deficiencies. As in the present case, the nature of the claim in S.E. v. Grant County was not "crystal clear." Id. at 643 n. 11. The court noted that the claim for failure to implement a Section 504 plan also overlapped with and stemmed from juvenile court proceedings and, also, entailed due process grievances for the effect the proceedings had on the student's educational placement. Id.

The court acknowledged that, given the interaction between the school proceedings, juvenile proceedings, and the student's disorders, "it [was] questionable whether relief would be available under the IDEA and whether exhaustion of administrative remedies would serve any useful purpose." Id. Nonetheless, the court reasoned that even if the claims were construed in a way that

9

might render the administrative remedies unproductive, it would be inconsequential because summary judgment in favor of the defendants would inevitably be granted. Id. The court reasoned that summary judgment would be granted the county attorney, police officers, and juvenile court who made the decision to arrest and charge the student, and the defendants named in the action, all of whom were education personnel, could not be held responsible for those actions. Id.

The court noted that in a similar case, the Court of Appeals for the Ninth Circuit held that "when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administraitve procedures and remedies, exhaustion of those remedies is required." Id. at 642 (quoting Robb v. Bethel School Dist. #403, 308 F.3d 1047 (9th Cir. 2002)). The court found the Ninth Circuit's reasoning to be applicable to the facts before it, because the plaintiffs desired a "compensatory education program sufficient to remediate [the student's] academic deficiencies." S.E. v. Grant County, 544 F.3d at 642. The court reasoned that this relief, essentially the effective implementation of a 504 Plan, was "initially best addressed by educational professionals through the administrative process." Id. at 642-43.

In the end, the court in S.E. v. Grant County found that "the issues raised by [the] litigation [were] best first addressed by the comprehensive administrative process Congress put in place for resolution of differences in the educational setting." Id. at 643. Further, the court noted that had the administrative process been utilized a proper factual record would have been developed and the district court could make a decision on the issue of whether a plan had been implemented. Id. Based on the foregoing, the court upheld the district court's dismissal of the plaintiff's claim under the Rehabilitation Act without prejudice. Id.

10

In the present case, the Court also concludes that the administrative procedures are the proper avenue for Ms. Powell to pursue the relief she seeks in this suit because the relief sought is a 504 plan, which is the type of relief that could be afforded by the administrative process. As in <u>S.E. v. Grant County</u>, the Complaint in this matter is not completely clear as to the relief sought, but at the hearing, Ms. Powell emphasized that implementation of a Section 504 plan was the relief she sought from this Court. When asked whether this suit was about Alcoa City Schools' failure to place C.P. on a 504 Plan, Ms. Powell confirmed it was. Later in the hearing, Ms. Powell explained that what she sought was for her son to have a chance at life, and she thought that a 504 Plan was the only way he would be able to function in school and have such a chance. Ms. Powell stated that, if officials had talked to her more and communicated with her, she believed that the whole problem could have been avoided. Although Ms. Powell, at points in the hearing, confused the school system's obligation to facilitate C.P. receiving medication with the school system having an obligation to actually provide the medicine, it was apparent that Ms. Powell sought the implementation of a 504 Plan. Ms. Powell stated as much numerous times throughout the hearing.

Further, Ms. Powell submitted a document entitled "Response to Motion to Dismiss Pursuant to F.R.C.P. 12," [Doc. 17] on September 9, 2009.[4] The response reiterates that Ms. Powell merely seeks a 504 plan when, in responding to the Defendants' allegations of duplicity, it states:

> 3:0[9]-CV-248[5] was filed because the defendants did not have CP reevaluated after I requested, nor did they offer him accommodations

---

[4] This document was filed out of time and without leave of the Court, and pursuant to Local Rule 7.2, this failure to respond in opposition to the Defendants' motion in a timely manner may be deemed a waiver of any opposition to the relief sought. Nonetheless, the contents of this response are essentially the same as those made by Ms. Powell at the hearing. The Court has considered the arguments made at the hearing, and thus, it is inconsequential whether the response is considered.

[5] The Plaintiff inadvertently substituted 3:04-CV-248 for 3:09-CV-248.

11

> and neither did they offer a 504 plan. [3:]09-CV-113 was filed because the defendants violated the Constitutional Rights of plaintiff under 18 U.S.C. 241 and 242, defendants also violated the rights of the plaintiffs under the due process clause of the 14th Amendment to the Constitution of the United States.

[Doc. 17 at 2]. Based on Ms. Powell's statements to the Court both in the hearing and through her filings, the Court finds that in filing this suit Ms. Powell, on behalf of C.P., primarily seeks relief in the form of a 504 plan.

Because obtaining a 504 plan is Ms. Powell and her son's primary goal for this litigation, it appears to the Court that this case is the type of case that Congress meant to be addressed through the IDEA administrative procedures. As in <u>S.E. v. Grant County</u>, Ms. Powell seeks relief that is exactly the type of relief that can be afforded through the complaint-response process, fair hearing, mediation, and appeals process that are incorporated in IDEA. While the Court is certainly sympathetic to Ms. Powell's plight and the frustration she has experienced in trying to address C.P.'s behavioral issues, the Court also notes that her correspondence has sent mixed messages and requested differing relief from school officials. Ms. Powell, like all other parents, must seek the 504 plan she desires through these officials and through the State of Tennessee, as required by IDEA.

Further, the Court notes that the Alcoa School System and its staff have expressed a willingness to evaluate C.P. as soon as he is able to re-enroll in school, which by the Court's estimation would be in mid-October. The Court expects the Defendants to fulfill this representation which they have made to both Ms. Powell and this Court. The Court admonishes both parties to try in earnest to cooperate with one another and listen to one another, because while the procedures outlined in IDEA are available to the parties and shall be used in resolving this matter, it appears

12

very likely that the parties could resolve this matter without proceeding through the complete IDEA administrative process.

Finally, the Court finds that, as in S.E. v. Grant County, any allegations relating to the actions of the Alcoa Police Department or Juvenile Court in Blount County cannot be remedied through an action against the present Defendants, who are educators, a school, and a school district.

**D.      Duplicative Nature of the Case**

The Defendants also move to dismiss this matter because they allege that it is an abuse of process that merely restates allegations Ms. Powell makes in other suits she has filed in this district on behalf of C.P. As previously stated, Ms. Powell represented to this Court at the hearing on this matter that the present suit was filed in order to obtain a 504 plan for C.P. The late-filed response reiterated this position by stating, "[3:]09-CV-113 was filed because the defendants violated the Constitutional Rights of plaintiff . . . ."

The Court has compared the Complaint filed in this action to the Complaint filed in Case No. 3:09-CV-113. The Complaint in Case No. 3:09-CV-113 is entitled "Complaint for Violation of Civil Rights," [Doc. 1]. However, the Complaint in Case No. 3:09-CV-113 cites neither the United States Constitution or the Civil Rights Act. The only legal authority cited therein is what the Complaint refers to as "Education Law 3214." [Doc. 1 at 1].[6] The Complaint filed in the instant action is simply entitled "Complaint," and alleges violations of the Fourteenth Amendment to the United States Constitution; the Civil Rights Act, specifically 42 U.S.C. § 1983; Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

---

[6] The Court has examined the excerpt of this law included in the Complaint and determined that it is in fact from the New York State Consolidated Laws and is in no way applicable to this action.

13

12101 et seq.

The manner in which Ms. Powell has pled these cases is inconsistent with her representations to the Court at the hearing, and the Court is left to determine whether Ms. Powell's attempts to use legal terms, with which she is not familiar, have rendered her Complaints less reliable than her representations to the Court at the hearing and her statement in the response about the relief she sought.

The Court agrees with the Defendants that the facts underlying this action and Case No. 3:09-CV-113 are the same, and further, Ms. Powell has only disputed that the relief sought in the cases is different, not that the underlying facts differ in anyway. Coupling the fact that the cases arise out of a common set of facts with Ms. Powell's representation that this suit is only about obtaining a 504 plan and that Case No. 3:09-CV-113 is to remedy any constitutional violations, the Court finds that Ms. Powell, on behalf of her son, has agreed that the constitutional allegations are more properly addressed in Case No. 3:09-CV-113.

Further, the Court finds that having addressed the claim for relief in the form of a 504 plan, it would be a waste of judicial resources to allow this case to proceed on a parallel trajectory as Case No. 3:09-CV-113, when Ms. Powell has represented to the Court that the present matter is not meant to address constitutional claims.

### III. CONCLUSION

Based on the foregoing, the Court finds that the Plaintiff has failed to exhaust her administrative remedies as required by the Individuals with Disabilities Education Act. Therefore, the Court finds that the prayer for relief in the form of a 504 plan, which the Plaintiff has pled under the Americans with Disability Act and Rehabilitation Act of 1973, is not ripe for adjudication by

this Court, and this claim shall be **DISMISSED WITHOUT PREJUDICE**, to allow refiling should the available administrative remedies be properly exhausted.

As to the claims alleged pursuant to the Fourteenth Amendment to the United States Constitution and the Civil Rights Act, the Court finds that the Plaintiff has represented to this Court that, in this case, she requests no relief based upon these claims because she intends to pursue these claims in Case No. 3:09-CV-113. Thus, because no relief is sought based upon the constitutional claims in this matter, these claims shall be **DISMISSED WITHOUT PREJUDICE**, to be addressed by the District Court in Case No. 3:09-CV-113.

Accordingly, the Court finds that the Defendant's Motion to Dismiss **[Doc. 10]** is well-taken in its prayer for dismissal to the extent outlined in this opinion, and therefore, it shall be **GRANTED**. This Action shall be **DISMISSED** by a Judgment to follow this Opinion.

**IT IS SO ORDERED.**

ENTER:

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

15

Case 3:09-cv-00248-CCS   Document 18   Filed 09/14/09   Page 15 of 15   PageID #: 146